

**SO ORDERED.**

**SIGNED this 29 day of September, 2010.**

_____
**JAMES D. WALKER, JR.
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | CASE NO. 10-51298-JDW |
| MICHAEL WADE CASTLEBERRY and | ) | |
| VICKY LYNN CASTLEBERRY, | ) | |
| | ) | |
| DEBTORS. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

<u>COUNSEL</u>

For Debtor:  Jason M. Orenstein
　　　　　　Post Office Box 4086
　　　　　　Macon, Georgia 31208

For Creditor: Ronald A. Levine
　　　　　　780 Johnson Ferry Road, Suite 240
　　　　　　Atlanta, Georgia 30342

　　　　　　Daniel Wilder
　　　　　　544 Mulberry Street, Suite 800
　　　　　　Macon, Georgia 31201

**MEMORANDUM OPINION**

This matter comes before the Court on the Motion of Ford Motor Credit Company to Alter, Amend and Modify Order of Confirmation. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(L). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Findings of Fact**

Debtors Michael Wade Castleberry and Vicky Lynn Castleberry filed a joint Chapter 13 petition on April 27, 2010. On Schedule D, they listed Ford Motor Credit Company as a secured creditor, with a claim of $21,000 secured by a 2007 Ford F150 valued at $15,300. On April 20, 2010, the Court issued a notice of the bankruptcy filing that included notice that the confirmation hearing was scheduled for June 28, 2010, and that objections to confirmation were due seven days prior to that date.

In their Chapter 13 plan, filed May 5, 2010, Debtors proposed to pay Ford Credit the value of its collateral and to pay nothing on the unsecured portion of its claim. The plan also included a special provision that, upon Debtors' completion of the plan and discharge, "Ford Credit shall release title to debtors' vehicle to counsel for debtors with all liens marked satisfied." (Chapter 13 Plan, docket no. 8.) Ford Credit filed no objection to confirmation prior to the confirmation hearing. At the hearing on June 28, 2010, the Chapter 13 Trustee recommended the plan for confirmation. On July 8, 2010, the Court entered an order confirming the plan. Also on

July 8, 2010, Ford Credit filed an untimely objection to confirmation.[1]  Four days later, on July 12, 2010, Ford Credit filed a motion to alter, amend and modify the confirmation order on the ground that its treatment under the plan is contrary to the law.  The following month, on August 13, 2010, it timely filed a proof of claim,[2] listing a secured claim of $20,334.70 and collateral as the 2007 F150, purchased on October 31, 2007.

The Court held a hearing on Ford Credit's motion on August 16, 2010.  After considering the facts and the arguments of the parties, the Court will deny the motion.

### Conclusions of Law

Ford Credit seeks modification of Debtors' Chapter 13 plan in such a way that it will receive payment of its claim in full with interest (910 treatment).  It argues it is entitled to such treatment under the hanging paragraph of 11 U.S.C. § 1325(a) and, therefore, the Court made a legal error by confirming a plan that provides payment of Ford Credit's claim only to the extent of the value of its collateral and for discharge of the unsecured portion of its claim (cramdown treatment).

An order confirming a Chapter 13 plan is a final order.  United Student Aid Funds, Inc. v. Espinosa, __ U.S. __, 130 S. Ct. 1367, 1376 (2010).  Therefore, Ford Credit's motion is governed by Federal Rule of Bankruptcy Procedure 9023, applicable to requests for new trial or amendment of judgment.  Kellogg v. Schreiber (In re Kellogg), 197 F.3d 1116, 1119 (11th Cir. 1999).  The only grounds for granting such a motion are "newly-discovered evidence or manifest

---

[1] The deadline for objecting to confirmation was June 21, 2010.

[2] The deadline for filing a proof of claim was August 23, 2010.

errors of law or fact." Id.

Manifest Errors of Law or Fact

The Court will begin by considering whether it made any manifest errors or law or fact. A manifest error "is not demonstrated by the disappointment of the losing party"; rather it arises upon the court's "'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto v. Metropolitan Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). In this case, Ford Credit argues the provision cramming down its claim is "illegal" on its face because it is contrary to the provisions of the hanging paragraph and, thus, the Court erred in confirming Debtors' plan. In addition, Ford Credit argues that if the Court does not change its treatment under the plan, it should invalidate the special provision requiring Ford Credit to terminate its lien upon Debtors' discharge.

Generally, secured claims are subject to bifurcation. The claim is a secured claim to the extent of the value of the collateral. 11 U.S.C. § 506(a). Any debt in excess of that value becomes an unsecured claim. However, the hanging paragraph to § 1325(a) provides that § 506 does not apply

> if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [period] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle ... acquired for the personal use of the debtor.

Id. § 1325(a), hanging paragraph. Such claims, known as 910 claims, must be treated as fully secured without regard to the value of the collateral. Nuvell Fin. Servs. Corp. v. Dean (In re Dean), 537 F.3d 1315, 1320 (11th Cir. 2008).

Under 11 U.S.C. § 1325(a), the Court "shall confirm" a plan that complies with the provisions of the Bankruptcy Code. <u>Espinona</u>, 130 S. Ct. at 1381. With regard to secured creditors, the Court is required to confirm a plan if (1) the creditor accepts the plan or (2) the creditor retains its lien until it receives payments equal to the present value of its secured claim or (3) the debtor surrenders the collateral. <u>Id.</u> § 1325(a)(5). The second option is commonly referred to as a cramdown when the creditor is undersecured and its claim is bifurcated. In a cramdown, the debtor pays the value of the collateral, and pays the remainder of the claim pro rata with general unsecured creditors–who often receive no dividend. The hanging paragraph effectively eliminates the cramdown option for 910 claims because they can never be divided into secured and unsecured components.

The Supreme Court recently said in dicta that a bankruptcy judge is required "to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue." <u>Espinosa</u>, 130 S. Ct. at 1381, n.14. However, Debtors' cramdown of Ford Credit's claim is not an obvious plan defect. First, it is not clear from the plan that Ford Credit's claim was a 910 claim. The Court, perhaps, could have made a reasonable assumption that Ford Credit held a purchase money security interest based on the name of the creditor and the nature of the collateral. The Court could even have attempted to calculate the number of days between the loan date and the petition date (approximately 908 days). However, at the time of the hearing on confirmation, Ford Credit had not filed a proof of claim. Even if the Court had found Ford Credit's claim met *some* of the requirements for 910 treatment, others remained in doubt. For example, at the hearing on the motion at issue, Debtors' counsel indicated Debtors could raise a defense to the personal-use element of the hanging paragraph. Thus, at the time of confirmation, the Court

5

could not determine whether the car was purchased for the personal use of Debtors without taking evidence. Absent an objection from Ford Credit, the Court had no reason to consider such evidence.

Second, even if the plan expressly conceded Ford Credit's claim was a 910 claim, the Court could not assume Ford Credit objected to such treatment when Ford Credit remained silent. In fact, as a general rule, courts agree that a secured creditor's failure to object to a Chapter 13 plan may constitute its acceptance of the plan. Wachovia Dealer Servs. v. Jones (In re Jones), 530 F.3d 1284, 1291 (10th Cir. 2008); see also Flynn v. Bankowski (In re Flynn), 402 B.R. 437, 443 (B.A.P. 1st Cir. 2009) (collecting cases). Nevertheless, a handful of courts have held a 910 creditor's failure to object to confirmation cannot be deemed acceptance of a plan that crams down its claim. In re Montoya, 341 B.R. 41, 45-46 (Bankr. D. Utah 2006); In re Garner, 399 B.R. 267, 273 (Bankr. D. Utah 2009); accord In re Bethoney, 384 B.R. 24, 33-34 (Bankr. D. Mass. 2008); Regional Acceptance Corp. v. Williams (In re Williams), No. 06-80695, adv. no. 06-9024, 2007 WL 128891, at *3-4 (Bankr. M.D.N.C. Jan. 12, 2007); In re Montgomery, 341 B.R. 843, 845 (Bankr. E.D. Ky. 2006).

In Montoya, the court said, "[I]mplied acceptance of an otherwise compliant plan ... is quite different from proposing a plan intentionally inconsistent with the Code and then waiting for the trap to spring on a somnolent creditor." 341 B.R. at 45. As a consequence, a plan that provides cramdown treatment of a 910 claim "presents no less a bar to confirmation than failing to pay priority claims in full, proposing a plan in bad faith, or proposing a plan that is not feasible." Id. at 46.

The Court finds Montoya unpersuasive. Unlike bad faith or infeasibility, a cramdown is

not a bar to confirmation if the affected creditor accepts such treatment.  According to Montoya, implied acceptance of a plan under § 1325(a)(5)(A) is only appropriate when acceptance is unnecessary because the plan has been "properly noticed and otherwise meets the requirements of § 1325(a)." Id. at 45.  Not only does such an exception essentially eviscerate the general rule permitting implied acceptance, but it would also place the burden on the debtor in every case to prove a negative–that any claim that might remotely fall within the scope of the hanging paragraph is not a 910 claim–while absolving the creditor of any responsibility for protecting its rights.

      The introduction of the hanging paragraph to bankruptcy jurisprudence has presented a difficult dilemma.  A debtor's decision to file bankruptcy is almost always grounded in an acknowledgment of the reality that his or her debts can never be repaid from current earnings.  Contrary to the popular perception of rampant abuse, most debtors who receive the benefit of a discharge in bankruptcy would never, absent bankruptcy, be able to pay the discharged debts.  Historically, creditors who have enjoyed secured status have been required to demonstrate that the value of their collateral would afford an equivalent benefit outside of bankruptcy.  There had only been one exception to this rule–the holders of claims secured solely by a security interest in the debtor's principal residence.  11 U.S.C. § 1322(b)(2).  Arguably that exception has been justified by the appreciating nature of such property, recent history being the foremost exception.  In 2005, the hanging paragraph to § 1325(a) introduced another exception that applies to holders of claims secured by 910 vehicles as described *infra* and to holders of claims secured by a purchase money security interest in other goods when the debt was incurred within a year of the bankruptcy filing.

As a consequence of this new provision, bankruptcy jurisprudence lost its connection with reality. In the case of 910 vehicles, debtors are required to pay secured claims that bear no relation to the value of the property. Not surprisingly, debtors often propose to surrender such vehicles to creditors and to discharge the resulting deficiency claim. Faced with those circumstances, a creditor might find it preferable to accept payments under a plan in an amount less than the full amount of the 910 claim rather than dealing with the liquidation of the vehicle. Section 1322 of the Bankruptcy Code does not prohibit such a plan provision. Accordingly, any plan proposing such treatment would not be void on its face even if a creditor could defeat the plan proposal with an objection.

A creditor finding itself in Ford Credit's shoes might attempt to raise the specter of bad faith. A plan provision no reasonable creditor would ever knowingly accept might be one proposed in bad faith. However, a plan proposal such as the one in this case, made in accordance with economic reality, proposing treatment to the creditor that would be equal to or better than surrender of the collateral cannot be considered as having been proposed in bad faith unless it is specifically prohibited by the Code.

If a creditor is unhappy with its treatment under the plan, it must take some affirmative action to timely communicate its opposition. In this case, Ford Credit did not file an objection until more than two weeks after the deadline for doing so and more than one week after the Chapter 13 Trustee recommended the plan for confirmation. The objection was not filed until the same day the Court signed the confirmation order. In such circumstances, the Court may deem Ford Credit's silence as acceptance of the plan. Because the creditor's acceptance of the plan satisfies § 1325(a)(5), the Court did not commit any legal error by confirming the plan.

Ford Credit has also argued that based on the Eleventh Circuit's opinion in <u>Universal Mortgage Co. v. Bateman</u> (<u>In re Bateman</u>), 331 F.3d 821 (11th Cir. 2003), its lien should survive Debtors' discharge. However, <u>Bateman</u> presented a very different fact scenario. The creditor held a first mortgage on the debtor's principal residence. The debtor proposed to pay only a portion of the mortgage arrearage through the plan.[3] Although the creditor did not object to the plan, it filed a timely proof of claim that disputed the amount of arrearage included in the plan. <u>Id.</u> at 822-23. Because the debtor did not timely object to the proof of claim, it served to establish the allowed amount of the arrearage. <u>Id.</u> at 827-28. The court found a timely filed proof of claim that conflicts with a plan provision serves to prevent a secured creditor's acceptance of the plan under § 1325(a)(5)(A). <u>Id.</u> at 829. Because § 1325(a)(5) was not otherwise satisfied as to the arrearage claim, the plan was erroneously confirmed by the bankruptcy court. Although the error did not prevent the plan from enjoying res judicata effect, the plan could not "invalidate the creditor's lien." <u>Id.</u> at 830-31. Thus, "to the extent that [the creditor] had any rights to act against [the debtor] pursuant to the terms of the mortgage, it retain[ed] those rights despite the terms of the plan." <u>Id.</u> at 834. The court noted its decision was specific to cases involving real property subject to the anti-modification provision of § 1322(b)(2). <u>Id.</u> n.12. As a result, <u>Bateman</u> does not apply in this case. Therefore, Ford Credit is not entitled to retain its lien after Debtors complete their plan and receive a discharge.[4]

---

[3] Pursuant to 11 U.S.C. § 1322(b)(2), a Chapter 13 plan may not modify the rights of creditors holding "a claim secured only by a security interest in real property that is the debtor's principal residence[.]"

[4] An open question remains as to whether <u>Bateman</u> would dictate a different result if (1) Ford Credit had filed a proof of claim within the time to object to confirmation that conflicted with its treatment under the proposed plan and (2) the evidence available at confirmation

Newly Discovered Evidence

As discussed above, the Court did not have sufficient information at the time of confirmation to conclude Ford Credit's claim was a 910 claim. At the hearing on its motion, Ford Credit argued it could prove the applicability of the hanging paragraph through the presentation of evidence. However, it has not shown or even asserted that such evidence is newly discovered. Consequently, any such evidence cannot be used to justify a change in the confirmation order. Kellogg v. Schreiber (In re Kellogg), 197 F.3d 1116, 1119-20 (11th Cir. 1999). Rule 9023 is not intended to give creditors who sit on their rights a second bite at the apple, and attempts to take that second bite are regarded as an abuse of the Rule. See Ellenberg v. Board of Regents of the Univ. Sys. of Ga. (In re Midland Mech. Contractors, Inc.), 200 B.R. 453, 456 (Bankr. N.D. Ga. 1996).

Conclusion

The Court has found no basis to alter or amend the confirmation order. Therefore, Ford Credit's motion will be denied. Consequently, pursuant to 11 U.S.C. § 1327(a), Ford Credit is bound by the provisions of the plan as confirmed.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT

---

demonstrated Ford Credit was entitled to 910 treatment. In such circumstances, the Court would have to consider whether the anti-modification provisions of the hanging paragraph and of § 1322(b)(2) are analogous. Because the appropriate facts are not before the Court, the Court offers no opinion on the question.